## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Criminal Action No. 2:14-cr-0019 |
| | ) |
| MICHAEL J. FREE, | ) Judge Mark R. Hornak |
| | ) |
| Defendant. | ) |

## OPINION

**Mark R. Hornak, United States District Judge**

In December of 2014, Michael J. Free was convicted of six counts of an indictment involving producing false filings and making false representations to a bankruptcy court, in violation of 18 U.S.C. §§ 152 &157. *See* ECF No. 65. On August 3, 2015, Mr. Free was sentenced to a 24 month term of imprisonment, to be served concurrently as to each of Counts One through Six. Shortly thereafter, Mr. Free filed a notice of appeal, taking exception to the Court's Sentencing Guidelines calculation and the Court's sentence. Presently, Mr. Free moves this Court to remain on bond pending the resolution of his appeal.

Such a request is governed by 18 U.S.C. § 3143(b) (1). According to that statute,

[T]he judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds—
(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
(i) reversal,
(ii) an order for a new trial,
(iii) a sentence that does not include a term of imprisonment, or
(iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

Though the statute appears to require a District Court to find that the appeal will "likely" be successful on the merits, the Third Circuit has clarified that §3143(b)(1) does not actually require such near-perfect clairvoyance. *See U.S. v. Miller*, 753 F.2d 19, 23 (1985) ("the phrase *'likely* to result in reversal or an order for a new trial' cannot reasonably be construed to require the district court to predict the probability of reversal.") Instead, as interpreted by the Third Circuit, the statute has four requirements that the Defendant must demonstrate by clear and convincing evidence to secure release pending appeal:

> (1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released;
> (2) that the appeal is not for purpose of delay
> (3) that the appeal raises a substantial question of law of fact; and
> (4) that if the substantial question is determined favorably to the defendant on appeal, that decision is likely to result in reversal or an order for a new trial [a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process][1]

*Miller*, 753 F.2d at 24. *See also U.S. v. Smith*, 793 F.2d 85 (1986); *U.S. v. Messerlian*, 793 F.2d 94 (1986).

As applied here, the Court first finds that Mr. Free is not likely to flee or pose a danger to the safety of any other person or the community if released. Indeed, at the time of sentencing the government agreed. *See* ECF No. 102 at 117–18.

Second, the court concludes that the appeal is not for purposes of delay. As discussed below, the merits of the appeal are not frivolous and the appeal could result in a substantially lower advisory Sentencing Guideline Total Offense Level being applied to Mr. Free's sentencing. Furthermore, this issue was actively and plausibly litigated in each party's

---

[1] The quotation from *Miller* is altered with brackets because, when these cases were decided, the statute only allowed release pending appeal when the appeal was likely to result "in reversal or an order for a new trial." Now, the statute also includes appeals likely to result in "a sentence that does not include a term of imprisonment" or "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." This added language, however, does not alter the substance of the four step analysis. *See U.S. v. Lignelli*, 2015 WL 3504960 at *2 (2015) (outlining the four step inquiry).

sentencing memorandum and at the sentencing hearing itself. The Court finds no evidence that the appeal is taken for purposes of delay.[2]

Third, the Court also concludes that Mr. Free raises a "substantial question" on appeal. A substantial question is a "significant" question "which is either novel, which has not been decided by controlling precedent, or which is fairly doubtful." *Miller*, 753 F.2d at 23. Though a district court does not need to determine that it is *likely* (in the ordinary usage) to be reversed by the court of appeals, it must engage in *some* consideration of the merits. Specifically, the district court must conclude that the question presented on appeal is "fairly debatable." *Smith*, 793 F.2d at 89. In articulating this standard, the Third Circuit distinguished the "fairly debatable" standard from the more limited test used by other Circuits—namely, that the question must be "close . . . or one that very well could be decided [against the district court]." *Id.* The Third Circuit further held that the "fairly debatable" test was "consistent" with an approach articulated in a different context, that the issues be "debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'" *Id.* (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)) (emphasis in original)

By way of example, the Third Circuit has held that an appeal *did* raise a "substantial question" when a defendant claimed that a prosecutor violated *Brady* by failing to disclose that a medical examiner was willing to testify that a car accident (rather than defendant's conduct) caused the victim's injuries. *Messerlian*, 793 F.2d 97. On the other hand, an appeal challenging the constitutionality of an 11 juror conviction pursuant to Federal Rule of Criminal Procedure 23(b) *did not* raise a "substantial question." *Smith*, 793 F.2d at 90.

---

[2] Though the statute requires the court to find that the appeal is *not* for purposes of delay, "[i]n some circumstances it is perfectly reasonable to take the absence of proof of [an event's] occurrence as positive proof of its nonoccurrence." Irving M. Copi, INTRODUCTION TO LOGIC (Macmillan, 1982).

Here, Mr. Free appeals this Court's calculation of the "loss amount," as is pertinent under § 2B1.1 of the Sentencing Guidelines. Section 2B1.1(b)(1) provides various Guideline Offense Level increases based on the pecuniary loss that resulted from the underlying fraud or deceit. In this case, Mr. Free was convicted of hiding assets from a bankruptcy court by filing false certification documents and making material misrepresentations to that court. While Mr. Free's deceit plainly harmed the integrity of the judicial process—and this Court articulated that as the principal basis for the sentence imposed—it did not, however, appear to actually cause pecuniary harm his creditors or anyone other than, perhaps, him. ECF No. 102 at 105–11. It does seem apparent that all agree that the assets that Mr. Free *did* disclose (standing alone or coupled with those which were ferreted out by the bankruptcy Trustee) more than cover the claims of his outstanding creditors and the administrative expenses of the bankruptcy proceeding. Based on the record developed at trial and at sentencing, it does not appear that any creditor will suffer any financial loss at all, and all administrative expenses of the bankruptcy will be paid, with some assets left over.

At the sentencing hearing, this Court concluded that the "loss amount" in this case approached (if not exceeded) one million dollars because Mr. Free intended to conceal, and did conceal, from the bankruptcy court assets of at least one million dollars. ECF No. 102 at 88-89. Specifically, the Court concluded that the Sentencing Guidelines reflected a policy position that the sentence should be greater when one attempts to conceal greater assets in a bankruptcy proceeding—even when the actual pecuniary harm to the creditors, viewed in hindsight, was less than the amount concealed. *Id.* at 92–93. As well, the Court found that the loss amount calculation analysis in *United States v. Feldman,* 338 F.3d 212 (3rd Cir. 2003) was likely distinguishable because unlike the present case, *Feldman* involved an arguably benign motive

4

for concealing assets from a bankruptcy court. ECF No. 102 at 92. Ultimately, this Court adopted the Guidelines calculation of the Probation Office in the Presentence Report that set the loss amount at between $400,000 and $1,000,000, *see* ECF No. 73 at 11; ECF No. 88 at 3–4, although it noted both the validity of the Government's contention that his intended concealment was likely far higher, and the factual reality that all of the creditors and the administrative expenses would be paid. ECF No. 102 at 91.[3]

On appeal, Mr. Free contends that the § 2B1.1 loss amount in his case should be zero because the creditors suffered no actual pecuniary loss. While this Court disagreed with Mr. Free's argument at the sentencing hearing, the lack of direct precedential authority as to his argument, and the potential merits of that argument, render the issue "fairly debatable," such that it raises a "substantial question" for purposes of the statute. Here's why.

The language of the relevant Guidelines Commentary provides some facial support for Mr. Free's position, and that Commentary is to be given weight. *See United States v. Svani*, 733 F.3d 56, 62 (3d Cir. 2013) ("[G]uidelines commentary, interpreting or explaining the application of a guideline, is binding on us when we are applying that guideline because we are obligated to adhere to the Commission's definition.") The Commentary describing the determination of loss

---

[3] The transcript of the sentencing hearing reveals that this Court's recitation at that time was not crystal clear on this point, but in the end, I conclude that my rulings were clear enough for consideration of the issue here, and I believe by the court of appeals. In my Tentative Findings regarding Sentencing and the Guidelines calculations, I adopted the reasoning and result of the Presentence Report that there was an upward adjustment of 14 levels, as that coincided with the amount of debt sought to be discharged, approximately $671,000. ECF No. 88 at 4. Under a fair reading of *Feldman*, and an application of common sense, the maximum loss that could have been pulled off by the Defendant would be to conceal enough assets so that all creditors got nothing and all administrative expenses went unpaid. All in, that would total in this case to around $1,000,000. At the Sentencing hearing, I found that the "loss amount," in terms of the amount of value Mr. Free sought to conceal, notably exceeded $1,000,000, which if applied as I orally stated it would have led to an upward adjustment of +16 levels under § 2B1.1(b)(1)(I). I nonetheless tentatively and ultimately formally calculated the "loss amount" to be applied at the lower +14 level, applying the reasoning set out at Paragraph 37 of the Presentence Report. I believe that it is possible, and legally correct, for two things to be true, namely, that Mr. Free did try to conceal assets well north of $1,000,000, but that the correct upward enhancement on the facts in the record in this case was +14 Levels based on the maximum level of monetary harm he could have been intending to inflict on the bankruptcy process (even if, in the end, it turned out that there was no monetary harm at all).

5

for § 2B1.1(b)(1) defines that the loss amount "is the greater of actual loss or intended loss." U.S.S.G. § 2B1.1 cmt. n.3(A).

"Actual Loss" is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense." As "reasonably foreseeable" limits the level of actual "pecuniary harm that resulted from the offense," the "actual loss" amount may require an ex-post quantification of the real pecuniary harm that the victim incurred. Here, Mr. Free contends that such harm was \$0.[4]

"Intended Loss," is "(I) the pecuniary harm that was intended to result from the offense; and (II) includes intended pecuniary harm that would have been impossible or unlikely to occur."[5] This Court believed that it was required to calculate the loss amount as it did because Mr. Free intended to conceal from the bankruptcy court at least the assets that would cover his debts and administrative expenses, and likely much more (whether or not there was any actual pecuniary harm or gain from his doing so), and thus was responsible for a loss amount under § 2B1.1 at least approaching \$1,000,000. However, on a different reading of the Commentary, the proper calculation may turn on a determination of the extent to which Mr. Free intended to short-change his *creditors*, rather than the extent to which Mr. Free intended to short-change the

---

[4] *See U.S. v. Nagle*, 803 F.3d 167, 180–83 (3d Cir. 2015) (calculating loss with respect to the actual value lost, after accounting for any benefit conferred by Defendant). In *Nagle*, the defendants were charged with procuring government contracts while fraudulently asserting that they were eligible "disadvantaged business enterprises" ("DBE"). The Government argued that in calculating the "loss amount" for Sentencing Guidelines purposes, the full value of the fraudulently obtained contracts was the benchmark. The defendants countered that they were entitled to a "credit" for the value of the work actually performed and delivered under those contracts. The defendants' position prevailed before our Court of Appeals, and the "loss amount" in that case was reduced by the actual value of the goods and services delivered, even in a case where the intended fraud arguably involved the entire contract amount. Our Court of Appeals also told the District Court that at sentencing, it should "keep in mind" the goals of the DBE program and the frustration of those goals by the defendants' fraud. *Id.* at 183.

[5] Of note, this language is drawn from the 2014 Sentencing Guidelines that were effective when Mr. Free was sentenced. The subsequent edition of the Sentencing Guidelines—effective November 1, 2015—defines "Intended Loss" as "pecuniary harm that the *defendant purposely sought to inflict*." Insomuch as the changed language clarifies the intended meaning of the loss amount Guideline, it stresses that the actual intent of the concealment must have been to "inflict" monetary harm. This added emphasis in the latest edition of the Guidelines may give some credence to Mr. Free's argument on appeal (and therefore this Court's determination that Mr. Free raises a "substantial question" on appeal).

6

pool of bankruptcy assets. On such a reading, a sentencing court would examine the record to determine whether, and to what extent, Mr. Free intended the asset concealment to cause pecuniary harm to his creditors (even if, in actuality, he was mistaken about whether such harm would ever be caused). Here, while there is a fair inference that Mr. Free intended to impact the bankruptcy estate and therefore the creditors, and he could thus be fairly charged with intending to cause a loss up to the maximum amount (that is, all debts plus administrative expenses), the record was silent as to whether he believed that this amount totaled more than the approximately $1,000,000 noted, which would make him chargeable with intending a loss of a higher amount.[6]

Fourth, and finally, if Mr. Free's interpretation of the "loss amount" applicable in these circumstances carries the day on appeal, that decision is "likely to result in . . . a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1)(B). As noted by the Third Circuit, "[a] question of law or fact may be substantial but may, nonetheless, in the circumstances of a particular case, be considered harmless, to have no prejudicial effect, or to have been insufficiently preserved. A court may find that reversal or a new trial is 'likely' only if it concludes that the question is so integral to the merits of the conviction on which the defendant is to be imprisoned that a contrary appellate holding is likely to [result in one of the four consequences outlined in § 3143(b)(1)(B)]." *Miller*, 753 F.2d at 23.

---

[6] In this case there is some merit to the view that no matter how many assets Mr. Free concealed, 100% of the loss that could have ever been "intended" to occur would have maxed out at the amount of the debt, $671,000, plus the bankruptcy's administrative expenses. The Application Notes to the Loss Amount Guideline tell us that an "intended loss" means "the pecuniary harm that was intended to result from the offense." *Id.* at 179. It would appear to this Court that absent some evidence of a belief by Mr. Free (even if mistaken) that the debt involved was greater than it really was (thus supporting an inference that a greater loss was intended), the most harm that could so be intended would be the causing of the loss of 100% of the actual debt plus expenses (notwithstanding that since Mr. Free did disclose some assets, it would not have risen to that amount). Finally, consistent with the admonition of *Nagle* and as this Court noted at sentencing, in this case the principal basis for the sentence imposed was Mr. Free's deception to and in the bankruptcy court, which would appear to "keep in mind" the core goal of the judicial system that participants tell the truth to courts.

7

Here, such a result seems "likely" as that term is used in this specific context—that is, whether it is "likely" that a successful appeal will result in "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S. C. § 3143(b)(1)(B)(iv). At sentencing, Mr. Free's Offense Level Calculation began with a base offense level of six (6), plus an upward adjustment of fourteen (14) levels for a loss amount of over $400,000 but less than $1,000,000 (pursuant § 2B1.1(b)(1)(H)), plus another upward adjustment of two (2) levels for an offense that involved a misrepresentation or other fraudulent action during the course of a bankruptcy proceeding (pursuant to § 2B1.1(b)(9)(B)), thus resulting in a Total Offense Level of twenty-two (22). With a Criminal History Category of I, Mr. Free's Guidelines range was 41-51 months. The Court sentenced Mr. Free to 24 months imprisonment.[7]

Without the fourteen level "actual loss" increase, however, Mr. Free's offense level would have been ten (10), because § 2B1.1(b)(9) imposes a minimum offense level of ten (10) if the offense involves a "misrepresentation or other fraudulent action during the course of a bankruptcy proceeding." At Criminal History Category I, this would lead to an advisory Guideline range of 6-12 months.

This Court recognizes that the Sentencing Guidelines are not presumptively reasonable for a sentencing district court, but it is nonetheless obligated to accurately calculate and then apply them as part of its sentencing calculus under 18 U.S.C. § 3553, and to give them due and serious consideration. *See United States v. Langford,* 516 F.3d 205, 211–215 (3d Cir. 2008).

---

[7] In doing so, I concluded, in applying the 18 U.S.C. § 3553(a) factors, that a sentence in the calculated Guidelines Range would be a sentence "greater than necessary" to fulfil the purposes of sentencing. I instead concluded that a Guideline range related to a Total Offense Level of 16 was sufficient but not greater than necessary to fulfill the purposes of Sentencing. In doing so, I did not "recalculate" the Guidelines via a formal departure, but instead reflected the range of sentences that I believed was appropriate in this case to fulfill my sentencing obligations under 18 U.S.C. § 3553(a).

8

Indeed, the United States Supreme Court has directed that a proper Guideline calculation must be the "starting point and the initial benchmark" of any sentence in order to "secure nationwide consistency." *Gall v. United States*, 552 U.S. 38, 128 (2007). If pre-sentencing calculations of advisory Guideline ranges (and these instructions from the higher courts) are to have any meaning, it must be because a particular defendant might be accorded different sentences if different Guideline ranges are initially calculated—all other matters being equal. That is, the reason district courts are required to calculate a Guideline range is because a Guideline range calculation (or, an improperly calculated Guideline range) is understood to have some effect on the eventual sentence imposed.

Indeed, the whole idea of a "variance"[8] reflects an understanding that the § 3553(a) factors, and the record facts considered in conjunction with these factors, can shift sentences, on the margin, above or below an originally calculated Guideline range. In other words, the universe of facts relevant to calculating a particular Defendant's "Guidelines" sentence does not, itself, define a Defendant's proper sentence in a given case; instead, these facts, considered through the lenses of the § 3553(a) factors, can properly push a particular sentence up or down, away from the calculated Guideline range.

This is all to say: the Guidelines calculation is supposed to matter.[9] It is supposed to matter in determining Mr. Free's ultimate sentence whether or not his calculated Guideline

---

[8] *See United States v. Vampire Nation,* 451 F.3d 189, 195 n. 2 (3d Cir. 2006) (distinguishing between traditional departures based on a specific Guidelines provision and sentencing "variances" from the Guidelines that are based on *Booker* and the § 3553(a) factors).

[9] Of course, the starting point can also matter in terms of anchoring effects. It has been observed that humans may place extra emphasis on some informational starting point (the "anchor") when making a decision. As suggested by various studies, judges (like other professionals in a given field) may not be immune from behavioral factors like anchoring. *See* Hon. Mark W. Bennett, *Confronting Cognitive "Anchoring Effect" and "Blind Spot" Biases in Federal Sentencing: A Modest Solution For Reforming A Fundamental Flaw*, 104 J. CRIM. L. & CRIMINOL. 489 (2014); Jeffrey J. Rachlinski, Chris Guthrie, and Andrew J. Wistrich, *Inside the Bankruptcy Judge's Mind*, 86

range was 41–51 months or 6–12 months. That is why the Court is obligated to properly calculate the applicable Guideline range and then consider it not as a presumption, but as a real factor. It is, therefore, "likely" for these purposes that a successful appeal will result in a new sentence, or at least a new sentencing analysis and consideration, when there is a significant shift in the Guideline calculation.

The question, then, is *how much* such a shift could reasonably matter. Will the likely "reduced sentence" be shorter than "the expected duration of the appeal process"? 18 U.S.C. § 3143(b)(1)(B)(iv). Considering that an appeal will likely take around 11-13 months to resolve,[10] this Court must find that, if it started with a Guideline range of 6-12 months, it is "likely" that Mr. Free would receive a sentence shorter than 11-13 months.[11] At the sentencing hearing, this Court stressed that even though a loss amount approaching (or greater than) $1,000,000 might be legally correct, from a logical perspective it overstated what the advisory Guideline sentence range should be in this case, given the very real possibility that there would not be much, if any, actual harm to creditors. ECF No. 102 at 108. Rather, the 24 month sentence, drawn from an Advisory Guidelines range of 21 to 27 months, more accurately reflected Mr. Free's "effort, persistently and consistently, taken at every turn, to mislead" the

---

BOSTON U. L. REV. 1227 (2006) (finding, in an experimental setting, anchoring effects relevant to interest rates selected by bankruptcy judges).

[10] According to the Administrative Office of the United States Courts, the median time from the filing of a notice of appeal to the last opinion or final order in a criminal case in our Circuit in 2014 was around 11 months. *See* Table B-4A, "U.S. Courts of Appeals—Median Time Intervals in Months for Civil and Criminal Appeals Terminated on the Merits, by Circuit, During the 12-Month Period Ending September 30, 2014," at www.uscourts.gov/file/14276/download.

[11] The Court is aware that if Mr. Free prevails on appeal on grounds our Court of Appeals considers material, he would be resentenced by this Court or, if the court of appeals directs, another District Judge. *See Gov't of the Virgin Islands v. Walker*, 261 F.3d 370, 376 (3d Cir. 2001) (noting that "[i]t is the standard practice in the district courts and in this circuit that a case on remand is assigned to the judge who originally heard it, we can, in the exercise of our supervisory power, reassign this case to a different judge upon remand." (internal quotations omitted)). Given that reality, I am even more hesitant to engage in any concrete forecast of what would actually happen at a resentencing, other than noting that if there would be a dramatic change in the calculated Guidelines range, that would be a factor to be seriously considered by any sentencing court.

bankruptcy court. *Id.* It should also be noted that the reality of this double-dealing with the bankruptcy court is not at issue on appeal.

Still, notwithstanding this emphasis on Mr. Free's lying to the bankruptcy court over and over again as articulated at sentencing, the Court concludes that it is "likely" for these purposes that a new sentence will be shorter than 11-13 months if Mr. Free's "zero" loss theory carries the day. Even after considering that the accurately calculated loss amount might overstate the appropriate sentence, the Court still stated that an appropriate Total Offense Level—in light of any overstatement—would be sixteen (16). *Id.* at 108–09. That Offense Level carries a Guideline range of 21–27 months; a range that is still significantly longer than the 6-12 month range that could result from a successful appeal, and higher than the estimated 11-13 months for an appeal to conclude.

Further, without the fourteen (14) Level "loss amount" adjustment, Mr. Free's conduct before the bankruptcy court might, by virtue of the Guidelines themselves, be reflected in the then-resulting Guideline range. At Mr. Free's sentencing, his fraudulent conduct before the bankruptcy court resulted in a two level increase pursuant to § 2B1.1(b)(9)(B). However, this provision also provides a minimum Offense Level of ten (10). Thus, without the fourteen Level "actual loss" adjustment, § 2B1.1(b)(9)(B) would impose a four (4) Level increase on Mr. Free's sentence—from his Base Offense Level of six (6) up to the minimum (b)(9)(B) level of ten (10). As such, the Court's varying from the Guideline range principally due to Mr. Free's deceit before the bankruptcy court (rather than the dollar amount involved) could be lessened; his conduct could now be viewed as having been baked into the calculated Guideline range to a greater degree. There might therefore be less reason to vary from that newly-calculated range.

11

Of course, (and it almost goes without saying) this Court cannot say with certainty that a new sentence will or will not result in "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S. C. § 3143(b)(1)(B)(iv). As noted above, the principal basis for Mr. Free's sentence was his dishonesty in the bankruptcy court. His appeal will not change that. But if it were determined on appeal that for sentencing purposes this Court was obligated to treat this as a "zero loss" case, then this Court cannot say conclusively that there would not be some change in the sentence imposed.

This is not the first time that a sentencing court has had to consider these questions. In *United States v. Antico*, 123 F. Supp. 2d 285 (E.D. Pa. 2000), the court faced a quite similar question and reached a parallel conclusion. The *Antico* defendant raised a "substantial question" about the loss amount calculation that would have reduced his loss amount from $700,000 to $31,000. *Id.* at 289. With the lower loss amount, the *Antico* defendant would also have faced a Total Offense Level of ten (10) with a Criminal History Category of I (again, a Guideline range of 6-12 months). *Id.* Noting that such a Zone B Guideline range may be satisfied by a sentence of conditioned probation, *Antico* held that a "likely outcome . . . could be a sentence of probation, not a sentence of imprisonment." *Id.* at 290 (citing U.S.S.G. § 5C1.1(c)(3)). Of course, like here, the *Antico* court cautioned that "[t]his conclusion should not be considered to be an indication of what this Court is likely to do if the Third Circuit accepts defendant's contention. Rather, it means only that the Court cannot say with certainty that defendant would be sentenced to a term of imprisonment should the Third Circuit accept defendants argument." *Id.* This finding sufficiently "satisfied the *Miller* test for bail pending appeal." *Id.*

12

The Court believes that the *Antico* analysis applies here. The focus of this Court's sentencing analysis was Mr. Free's lying and concealment in and to the bankruptcy court. His appeal will not affect those jury-found facts. What his appeal could do is resolve a "debatable" legal question in his favor, which would result in a substantial change in his Guidelines calculations. Since this Court is duty-bound to give meaningful weight and consideration to the Guidelines, it is therefore also duty-bound to recognize that a change in the "loss amount" factor from +14 Levels to 0 Levels, or from a Total Offense Level of 22 to 10, for the reasons noted above, might well make a difference in the sentence imposed. The Court concludes that in the circumstances present in this case, that fulfils the "likely" standard of § 3143(b)(1).

As such, this Court concludes by the requisite legal standard that (1) Mr. Free is not likely to flee or pose a danger to the safety of any other person or the community if released, (2) Mr. Free's appeal is not for the purpose of delay, (3) Mr. Free's appeal raises a substantial question of law or fact, and (4) if Mr. Free's substantial question is determined favorably to him on appeal to the degree he contends, that decision is sufficiently "likely" to result in a term of imprisonment less than the expected duration of the appeal process. Mr. Free will therefore be granted release on bond, on all existing conditions, pending the resolution of his appeal by the United States Court of Appeals for the Third Circuit.

An appropriate Order will issue.

s/ Mark R. Hornak
Mark R. Hornak
United States District Judge

Dated:  December 15, 2015

cc: All counsel of record

13